UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KRISTY MITCHELL, individually and as mother and next friend of NEVAEH OSORIO,<br><br>        Plaintiff,<br>v.<br><br>DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT and TIMOTHY DOWLER,<br><br>        Defendants. | Case No. 4:20-cv-00109-SMR-HCA<br><br>**DEFENDANTS DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT AND TIMOTHY DOWLER'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>(Oral argument requested) |

**COME NOW** Defendants Des Moines Independent Community School District ("District") and Timothy Dowler ("Dowler"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56 and LR 56(A)(2), in support of their Motion for Summary Judgment, submit the following Memorandum of Authorities.

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 2

II.  SUMMARY JUDGMENT PRINCIPLES ............................................................ 2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................... 4

IV.  ARGUMENT ................................................................................................. 6

        A.   PLAINTIFF'S CLAIM FOR NEGLIGENT SUPERVISION FAILS .......... 6

             1.   DMPS CANNOT HAVE A "SPECIAL RELATIONSHIP" WITH A NON-STUDENT AND THUS DID NOT OWE ANY DUTY TO PLAINTIFF ........................................................ 6

B.      DEFENDANTS ARE IMMUNE FROM SUIT ............................................. 8

C.      PLAINTIFF'S 42 U.S.C. §1983 CLAIM FAILS AS A MATTER
OF LAW AS DEFENDANTS HAVE NO DUTY TO PROTECT
AN INDIVIDUAL FROM PRIVATE VIOLENCE ..................................... 9

D.      REGARDLESS OF THE CLAIM, DEFENDANTS ARE ENTITLED
TO QUALIFIED IMMUNITY .................................................................. 16

CONCLUSION ................................................................................................. 18

## I.     INTRODUCTION

Plaintiff, Kristy Mitchell individually and on behalf of her daughter Nevaeh Osorio (Osorio), filed a lawsuit against the District and Dowler alleging they did not protect her daughter from injury while at a dance. Plaintiff asserts two causes of action arising out of these facts: (1) a cause of action for negligent supervision and (2) a cause of action for failure to protect Osorio under 42 U.S.C. § 1983. As further described herein, the undisputed material facts of this matter fail to create a genuine issue of material fact as to the Defendants' liability and thus Defendants are entitled to summary judgment as a matter of law.

## II.     SUMMARY JUDGMENT PRINCIPLES

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (emphasis added); *see also e.g. Woods v. DaimlerChrysler, Corp.*, 409 F.3d 984, 990 (8th Cir. 2005); *Davis v. City of Albia*, 434 F. Supp. 2d 692, 696 (S.D. Iowa 2006) (citations omitted). The court must view the

evidence and the inferences which may be reasonably drawn from it in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 474 (8th Cir. 1996). The moving party bears the burden of showing there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See e.g. Enterprise Bank*, 92 F.3d at 474; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The nonmoving party must then demonstrate the existence of specific facts that create a genuine issue for trial; mere allegations or denials are not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). In reviewing the evidence presented the court is "to consider only admissible evidence and disregard portions of various affidavits and deposition that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions." *Davis*, 434 F. Supp. 2d at 696. Summary judgment must be granted where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 250.

A fact is material when "it might affect the outcome of the suit under the governing law." *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003). "The substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.* An issue of fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) *see also Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends

on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

### III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

On October 5, 2019 Nevaeh Osorio (Osorio) was a sophomore student at Ankeny High School in Ankeny, Iowa.  SUMF ¶ 1.  Osorio had previously attended Roosevelt High School when she was a freshman.  SUMF ¶ 2.

On October 5, 2019, Defendant District held a homecoming dance for Roosevelt High School at Hy-Vee Hall in Des Moines, Iowa.  SUMF ¶ 3.  Osorio attended the dance with her friend that attended Roosevelt High School.  SUMF ¶ 4.  Timothy Dowler is a teacher at Roosevelt High School.  SUMF ¶ 5.  On October 5, 2019, Dowler was a teacher and a chaperone of the Roosevelt High School Homecoming Dance.  SUMF ¶ 6. At the dance Dowler was to walk around, talk with students, make sure everything was running smoothly.  SUMF ¶ 7.

At some point towards the end of the dance, Osorio had a conversation with Dowler.  SUMF ¶ 8.  Osorio and Dowler first discussed Osorio's move to the Ankeny School District.  SUMF ¶ 9.  At the end of their discussion, Osorio generally mentioned to Dowler that some students at the dance did not like her, however she did not provide specifics about the conflict or who the students were.  SUMF ¶ 10.  Dowler described the conversation with Osorio as casual and nonemotional, noting she did not appear to be crying or showing signs of stress.  There was nothing alarming in her tone.  SUMF ¶ 11. Dowler instructed Osorio to stay away from the students.  SUMF ¶ 12.  At the time Dowler spoke with Osorio there were no clues in her behavior or demeanor that revealed

an obvious or known risk present.  SUMF ¶ 13.  Nevaeh claims she told Dowler "these people are trying for fight me" and he said, "maybe you should just go somewhere else." SUMF ¶ 14.  Osorio did not speak to anybody else that was a teacher, a chaperone, or administrator at the dance about the fact she thought there was going to be a fight. SUMF ¶ 15.  Osorio did not relay any concern for physical violence to her friend, K.H., nor did her friend believe there was a threat of physical violence.  SUMF ¶ 16.

Within a minute of Osorio speaking to Dowler the fight occurred.  SUMF ¶ 17. When notified of the fight, Dowler immediately responded to the fight.  SUMF ¶ 18.  The fight broke up so quickly that Dowler did not know the parties involved, nor did he suspect Nevaeh was involved.  SUMF ¶ 19.  Osorio alleged she was attacked by three girls from Roosevelt: M.W., F.C., S. L.  SUMF ¶ 20.  When Osorio was at Roosevelt she did not have any problems with the three girls.  SUMF ¶ 21.  The summer after her freshman year she did not hang out with M.W., S.L., or F.C.  SUMF ¶ 22.  A couple of weeks before the dance Osorio attended the Roosevelt versus Ankeny football game at Drake stadium.  SUMF ¶ 23.  At the game she did not have any problems or disagreements.  SUMF ¶ 24.  Before the dance Osorio had received texts from M.W. asking her why she was following a boy on Instagram that M.W. had dated.  SUMF ¶ 25. M.W. Snapchatted Osorio and was calling her names.  SUMF ¶ 26.  M.W. only Snapchatted Osorio one time.  SUMF ¶ 27.  The night before the dance Osorio went to the Roosevelt -Hoover game and saw the three girls at that game.  She did not have any conversations, texts or Snapchats with them.  SUMF ¶ 28.

Before the dance Osorio had not talked to anybody associated with Roosevelt about any issues with any of the girls.  SUMF ¶ 29.  Osorio did not have any issues with the three girls until just a few minutes before the fight.  SUMF ¶ 30.

## IV.    ARGUMENT

### A.    PLAINTIFF'S CLAIM FOR NEGLIGENT SUPERVISION FAILS.

Plaintiff's first cause of action is captioned negligent supervision.  Plaintiff alleges Dowler had a duty to act to protect Osorio as she was a student of the District.  However, the evidence produced during discovery is she was not a student.  Plaintiff's Petition alleges Dowler and the District did nothing to prevent injury from occurring and breached their duty of care by failing to act.

### 1.    DMPS CANNOT HAVE A "SPECIAL RELATIONSHIP" WITH A NON-STUDENT AND THUS DID NOT OWE ANY DUTY TO PLAINTIFF.

A finding of negligence requires a legal duty that is owed to the plaintiff, a breach of that duty, proximate cause, and damages.  *Hartig v. Francois,* 562 N.W.2d 427, 429 (Iowa 1997) (citations omitted).  "Duty is a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actors part for the benefit of the injured person".  *Burton v. Metropolitan Transit Auth, 530 N.W.2d 696,699 (Iowa 1995).*  The existence of a duty of care, is a question of law and for the court to resolve.  *Garafalo v. Lambda Chi Alpha Fraternity,* 616 N.W.2d 647, 650 (Iowa 2000).  Under Iowa law, generally, the law imposes no affirmative duty upon individuals to act for the protection of others.  *Id.* at 652 (citing Restatement (Second) of Torts section 314 at 116 (1965).  However, in cases where the plaintiff alleges that her injury resulted from

a failure to act, the law requires the existence of a special relationship between the injured party and the alleged negligent party before a legal duty will be found to exist. Restatement (Second) of Torts § 314.  In this case, Osorio was not a student in the District and was attending the dance with her friend, a District student.

The Eighth Circuit Court of Appeals has been faced with the question of whether a special relationship existed between a school district and a non-student for purposes of establishing a duty under Plaintiff's negligence theory.  Specifically, a non-student motorist brought a negligence action against a school district after being injured in a collision with an automobile driven by a public high school student driving from one school district's high school campus to a neighboring district's campus. *Gylten v. Swalboski*, 246 F.3d 1139 (8th Cir. 2001).  In analyzing this issue, the Court noted that "the relationship between a school district and its students creates the duty." *Id.* at 246 F.3d 1143 (internal citations omitted).  The Court held, in part, that the school district "does not owe a duty…because **it does not have a special relationship with Mr. Gylten, a non-student, third-party plaintiff"**. *Id.* (emphasis added).  As a result, the Court concluded that "the grant of summary judgment was proper. Absent a duty, there can be no breach, and thus, no basis for recovery under a negligence theory." *Id*. at 1144-1145.  In this case, the District and Dowler did not have a special relationship with Osorio as she was not a student at the time of the incident.

Iowa federal courts have similarly refused to find a duty exists between an educational institution and a non-student who enters the boundaries of its' campus. *See Freeman v. Busch,* 150 F. Supp. 2d 995 (S.D. Iowa 2001).  In *Freeman*, a non-student

party guest brought a negligence action against college, alleging the student employee's omissions resulted in her injuries following sexual assault. The Plaintiff argued that a special relationship arose because the school undertook to provide supervisory and security services for economic consideration and that the provision of supervisory and security services created a legal duty owed to all guests of students. *Id.* at 1001.   In analyzing Plaintiff's theory of liability, the Court compared the instant case to prior case law, stating that "Here, the claim of a contractual duty is even weaker **because plaintiff is not a student."** *Id*. (emphasis added).   The Court concluded that the school did not owe a duty to a non-student Plaintiff and, as such, granted Defendant's motion for summary judgment. *Id.* at 1002.

Further, any argument that a special relationship was otherwise formed through the District and/or Dowler providing supervisory services during the dance has likewise been found to be insufficient to establish any special relationship with a non-student under Iowa law.   One who employs another to guard another is not responsible for harm caused to another by failure to act unless under a duty to act.   Restatement (Second) of Agency § 232 cmt b (1950).   Without establishing the existence of a special relationship, Plaintiff has not and cannot prove Dowler or the District owed any duty to Plaintiff whatsoever.   As a result, Plaintiff's negligence claim must fail as a matter of law.

**B.       DEFENDANTS ARE IMMUNE FROM SUIT.**

A school district is a municipality.   Iowa Code §670.1(2).   Iowa Code section 670.2 imposes liability on municipalities, and then Iowa Code section 670.4 exempts certain claims against municipalities.   Included in the exemption is

c. Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code §670.4(1)(c). Plaintiff's petition alleges that it was reasonably foreseeable that Osorio would be in danger and that Dowler or other staff members did not intervene. The only staff person that Osorio spoke to the night of the incident was Timothy Dowler. Dowler did not believe Osorio was in any danger. Thus a claim based upon performance or failure to perform a discretionary function is barred. Iowa Code §670.4(1)(c).

**C.   PLAINTIFF'S 42 U.S.C. §1983 CLAIM FAILS AS A MATTER OF LAW AS DEFENDANTS HAVE NO DUTY TO PROTECT AN INDIVIDUAL FROM PRIVATE VIOLENCE.**

Plaintiff alleges Dowler failed to protect Osorio from dangerous actions of other students as required under 42 U.S.C. §1983. 42 U.S.C. §1983 reads in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable…

To establish a claim under §1983, a plaintiff must allege (1) a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v.*

*Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L. Ed.2d. 40 (1988). To establish liability under §1983 for a government entity's violation of their right to substantive due process, any plaintiff "must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 426 U.S. 658, 690-92). Mere allegations of negligence are insufficient to find state liability, instead requiring affirmative state action which placed the Plaintiff in harm's way. *See Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000); *see also Armijo By & Through Chavez v. Wagonmound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998). In short, "negligence and gross negligence cannot support" a §1983 action for substantive due process violations." *Estate of Johnson v. Weber*, 785 F.3d 267, 272 (8th Cir. 2015).

It appears Plaintiff is trying to argue that Dowler had a constitutional duty to protect Osorio from actions taken by students at the Roosevelt dance, even though Osorio was no longer a student at the school. Osorio had transferred schools and was attending the dance; not as a student in the Des Moines Independent Community School District.

Generally, the Due Process Clause does not protect individuals from a state's failure to protect an individual from private violence. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). In this case, no special relationship was formed to exist between Osorio and Dowler that would justify exception to the general rule. *Id.* No special relationship exists between a school district and its students during a school-sponsored dance held outside of the time when students are required to attend for non-voluntary activities. *See: Leffall v. Dallas Independent School District,* 28 F.3d 521,

529 (5th Cir. 1983).   Thus, in the case at bar no special relationship existed between

Dowler or the District and Osorio.  Thus, no constitutional right was violated.

Plaintiff appears to allege that Dowler put Osorio in the danger, i.e., "state-created

danger" doctrine.   Under this doctrine Plaintiff must show Dowler and the District

created the danger.  To do so she must  present evidence that Osorio was:

> (1) that she was a member of a limited, precisely definable group, (2) that
> the municipality's conduct put her at a significant risk of serious,
> immediate, and proximate harm, (3) that the risk was obvious or known to
> the municipality, (4) that the municipality acted recklessly in conscious
> disregard of the risk, and (5) that in total, the municipality's conduct shocks
> the conscience.

*Montgomery v. City of Ames*, 749 F.3d 689, 694-95 (quoting *Fields,* 652 F.3d at 891).

In this case, Osorio was not a student in the District on the day of the incident and was

merely attending the dance as a guest, which does not meet the first required requirement.

The second element, which requires "the municipality's conduct put her at a

significant risk of serious, immediate, and proximate harm."

> The key to the state-created danger cases ... lies in the state actors' culpable
> knowledge and conduct in affirmatively placing an individual in a position
> of danger, effectively stripping a person of her ability to defend herself, or
> cutting off potential sources of private aid.  **Thus the environment created
> by the state actors must be dangerous; they must know it is dangerous;
> and, to be liable, they must have used their authority to create an
> opportunity that would not otherwise have existed for the third party's
> [acts] to occur.**

*Armijo*, 159 F.3d at 1263 (emphasis added).

Here, there is no substantial risk of serious harm in attending a dance off school

premises.  There is no evidence to support Dowler created any danger.  Prior to going to

the dance Osorio knew that one of the Roosevelt students was upset with her over a guy.

However, Osorio was not concerned, went to the dance and never reported anything prior to going to the dance. Dowler was told by Osorio in passing that some students at the dance did not like her. Even providing all reasonable inferences to Plaintiff, this cannot be said to have provided Dowler with knowledge that the dance was then a physically unsafe space. Even if Osorio's statement is taken that she told Dowler some girls wanted to fight her, Dowler did not know of any danger or immediate danger. There is no evidence to show his conduct put her at a significant risk of serious, immediate, and proximate harm.

Element three requires the risk to be "obvious or known to the municipality." The facts as presented, even with all reasonable inferences carried in Osorio's favor, do not amount to a risk which was "obvious or known to the municipality." *Montgomery*, 749 F.3d at 694. As previously discussed, the facts show that Osorio approached Dowler in a casual manner, first discussing her transfer from the district in a relaxed and congenial manner. During the conversation, Osorio mentioned that other students at the dance were upset with her, however Dowler noted that she did not seem fearful or anxious of any supposed threats made against her, and if threats were made, they were not relayed to him. In response, Dowler advised Osorio to stay away from those who did not like her. In fact, even after breaking up the fight, Dowler did not even suspect Osorio was involved until he was notified the following Monday. To impute knowledge of a risk of harm to Dowler, after a short, non-specific discussion with Osorio while he was chaperoning several hundreds of dance attendees, would be a violation of the general tenets of a substantive due process action, where "mere allegations of negligence are

insufficient." *See Gilkey*, 229 F.3d at 684.  Further, Defendants' proffered expert report by long-time school administrator James Spelhaug similarly concludes as much, finding that "no obvious or known risk" was present.  Thus, Plaintiff has failed to support facts to create an issue for trial regarding whether the danger facing Osorio was "obvious or known" and thus Plaintiff's section 1983 claim fails as a matter of law.

The fourth element requires the plaintiff to show "that the actor acted recklessly in conscious disregard of the risk." Here, as we discussed with the previous three elements, Osorio and Dowler had a brief conversation about her transition to a new district.  During the conversation, Osorio mentioned that there were some students there who did not like her, however she did not convey specifics about who or what threat existed.  At no time during the encounter did Dowler suspect that Osorio was in any danger, immediate or attenuated.  Put simply, even providing the Plaintiff with all reasonable inferences, this brief encounter and Dowler's suggestion that Osorio stay away from those who do not like her, does not constitute reckless action in conscious disregard of the risk.  Even if you accept Osorio's testimony that he told her "to go somewhere else" does not support Dowler acted with reckless disregard.  Thus, Plaintiff additionally has failed to meet the fourth element of the state created danger test, and their section 1983 claim must fail as a matter of law.

Unlike the preceding four elements, the fifth requirement that the Defendant's conduct "shock the conscience" is often litigated in the context of substantive due process claims against municipalities.  This element requires serious conduct on behalf of the state actor, considering "mere negligence can never be conscience-shocking and cannot

support a claim alleging a violation of substantive due process rights." *Hart*, 432 F.3d at

805 (citing *Gilkey*, 229 F.3d at 684).  The Eighth Circuit has explicitly held the violations

must involve conduct "so severe . . . so disproportionate to the need presented, and . . . so

inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it

amounted to a brutal and inhumane abuse of official power literally shocking to the

conscience."  *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (quoting *In re Scott*

*County Master Docket*, 672 F. Supp. 1152, 1166 (D. Minn. 1987), *aff'd sub nom. Myers*

*v. Scott Cty.*, 868 F.2d 1017 (8th Cir. 1989).

       Typically, to satisfy the "shock the conscience" element, plaintiffs must prove that

the state actor had acted with intent to harm the plaintiff.  *Terrell v. Larson*, 396 F.3d 975,

978 (8th Cir. 2005) (citing *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)).

However, when the defendants were afforded an opportunity to deliberate regarding the

risk of harm, in a practical manner, "deliberate indifference" will satisfy the element.  *Id*.

"The official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994).  Thus, the, courts must find sufficient evidence the

defendants acted intentionally or wrongfully in disregard of a known danger to "shock the

conscience," and any less finding, such as gross or typical negligence, does not "shock the

conscience." *Hart*, 432 F.3d at 806 (citing *Avalos*, 382 F.3d at 800; *Farmer*, 511 U.S. at

838 (stating "[A]n official's failure to alleviate a significant risk that he should have

*perceived* but did not, while no cause for commendation, cannot under our cases be

condemned. . . .") (emphasis added).

A somewhat analogous case came in *Leffall*, where a parent sought recovery after their child was shot and killed in a school parking lot following a high school dance where students began firing handguns recklessly into the air. *Leffall v. Dallas Independent School District,* 28 F.3d 521, 523 (5th Cir. 1983). The incident had come after a well-known tradition of students firing weapons during and after dances, leading to Dallas Police requesting the school refrain from holding school functions until adequate security could be assigned; nevertheless, the school went forward with the dance with two unarmed security guards. *Id.*

The § 1983 plaintiff must also show that the state acted with the requisite culpability in failing to protect the plaintiff from that danger to make out a constitutional violation," and this culpability has proven to be "deliberate indifference" towards the victim. Id. at 531. There is a significant distinction between a tort and a *constitutional* wrong. *Id.* at 532. In *Leffall*, the court concluded, even if there was a duty to protect from dangers arising out of the sponsorship of the dance, to protect, Plaintiff failed to allege fact that demonstrate deliberate indifference to those dangers. *Id*. (citing *de Jesus Benavides v. Santos*, 863 F.2d 385, 38 (5th Cir. 1989)).

In this case there is no evidence to support Dowler acted with deliberate indifference to Osorio. Dowler testified his conversation with Osorio was casual, nonemotional and there was nothing alarming in her tone. SUMF 11. She did not show any signs of stress. SUMF 12. There were no clues in her behavior or demeanor that revealed an obvious or known risk present. SUMF 13.

Lastly, a review of Plaintiff's Petition reveals the claim for violation of 42 U.S.C. § 1983 is only pled against Dowler.  Plaintiff has not presented sufficient evidence to create a triable issue regarding their section 1983 claims, and thus Defendants are entitled to summary judgment as a matter of law.

**D.     REGARDLESS OF THE CLAIM, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

When state officials and their employers are sued in their individual capacity, they are entitled to the protection of qualified immunity in the exercise of their discretionary duties, so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Qualified immunity operates not as mere defense from liability, but as immunity from suit.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The Supreme Court stated:

> Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.  See, *e.g., Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity protects **"all but the plainly incompetent or those who knowingly violate the law");** . . . ; *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (**officials are immune unless "the law clearly proscribed the actions" they took**); . . .  Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action **generally turns on the "objective legal reasonableness" of the action.** *Harlow,* 457 U.S., at 819, 102 S.Ct., at 2739, **assessed in light of the legal rules that were "clearly established" at the time it was taken**, *id.,* at 818, 102 S.Ct., at 2738.

*Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987) (emphasis added).

School officials and teachers qualify for qualified immunity protection, so long as they satisfy the traditional test for its application. *See* 109 Am. Jur. Proof of Facts 3d 105 (citing *Chivers v. Cent. Noble Cmty. Sch.*, 423 F. Supp. 2d 835, 855 (N.D. Ind. 2006). The traditional two-step inquiry requires the court assesses, in a light most favorable to the plaintiff, 1) whether the defendant's conduct violated a clearly established statutory constitutional right of which a reasonable person would have known. *Minor v. State*, 819 N.W.2d 383 (Iowa 2012.)

In *Heidmann v. Rother*, the Eighth Circuit was faced with a school official who used a blanket as a binding restraint for a disabled student upon advice of a school therapist. 84 F.3d 1021, 1031 (8th Cir. 1996). There, in finding the teacher could still avail itself of qualified immunity, the court found the teacher's behavior to not be "beyond the scope of professionally acceptable choices," and even if it had, the teacher would still be subject to qualified immunity unless a reasonable teacher would have recognized the conduct constitutes a violation. *Id*. at 1029, 1031.

In the matter at hand, even the most favorable of views of Dowler's actions do not constitute actions "beyond the scope of professionally acceptable choices" available to him, and his actions are not such that a "reasonable teacher" would recognize such as a violation of Osorio's rights. When Osorio mentioned that other students at the dance did not like her, however she seemed relaxed and unconcerned about any physical threat to herself, leading Dowler to suggest she simply stay away from those who did not like her. This conversation was so general, that Dowler did not in fact believe Osorio was in

-17-

danger.  Defendants' expert Spelhaug opined Dowler's actions were reasonable, and that

Spelhaug would have done the same with his own students and children.

## CONCLUSION

Pursuant to the undisputed facts and authorities cited above, the Court should

determine the Des Moines Independent Community School District and Timothy Dowler

are entitled to summary judgment on the negligent supervision claim because they are

statutorily immune from suit and the negligent supervision claim has no merit.  The Des

Moines Independent Community School District and Dowler are also entitled to summary

judgment on the 42 U.S.C. § 1983 - Failure to Protect Claim.

BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.


By:  _____*/s/ Janice M. Thomas*_____
                Janice M. Thomas  AT0007822
                801 Grand Avenue, Suite 3700
                Des Moines, IA  50309-8004
                Tel:  (515) 246-5828
                Fax:  (515) 246-5808
                Email:  thomas.janice@bradshawlaw.com

                **ATTORNEYS FOR DEFENDANTS DES MOINES**
                **INDEPENDENT COMMUNITY SCHOOL DISTRICT**
                **and TIMOTHY DOWLER**

Copy to:

Jeffrey M. Lipman
Lipman Law Firm, P.C.
1454 - 30th Street, Suite 205
West Des Moines, IA  50266
Tel:  (515) 276-3411
Fax:  (515) 276-3736
Email:  jeff@lipmanlawfirm.com
**ATTORNEYS FOR PLAINTIFF**

Alison F. Kanne
Wandro & Associates, P.C.
2501 Grand Avenue, Suite B
Des Moines, IA  50312
Tel:  (515) 281-1475
Fax:  (515) 281-1474
Email:  akanne@2501grand.com
**ATTORNEYS FOR PLAINTIFF**

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 15th day of February, 2021 by:

☐ U.S. Mail              ☒ CM/ECF
☐ Hand Delivered         ☐ EMAIL
☐ Federal Express        ☐ EDMS

*/s/ Lucy Anderson*