UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KRISTY MITCHELL, individually and as mother and next friend of NEVAEH OSORIO,<br><br>Plaintiff,<br><br>v.<br><br>DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT and TIMOTHY DOWLER,<br><br>Defendants. | Case No.: 4:20-cv-00109-SMR-HCA<br><br>**PLAINTIFF'S BRIEF IN RESISTANCE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COMES NOW Plaintiff Kristy Mitchell, individually and as mother and next friend of Nevaeh Osorio, and for her resistance to Defendants' motion for summary judgment, submit the following brief.

**Table of Contents**

Table of Authorities ................................................................................................................... 2

Disputed Facts............................................................................................................................ 3

Summary Judgment Standard .................................................................................................... 6

Argument ................................................................................................................................... 7

   A.   Plaintiffs have properly made their negligent supervision claim, and Defendants' "special relationship" issue is a red herring. ...................................................................................... 7

   B.   Defendants are not immune from suit for their negligence in this matter. ....................... 9

   C.   Defendant Dowler had a duty to protect Plaintiff in this matter, and his failure to do so establishes the 42 U.S.C. § 1983 claim................................................................................. 11

   D.   Defendants are not entitled to qualified immunity. ........................................................ 12

Conclusion ............................................................................................................................... 13

# Table of Authorities

**Cases**

*Am. State Bank v. Enabnit*, 471 N.W.2d 829 (Iowa 1991). .............................................................. 7

*C.P.X. through S.P.X. v. Garcia*, 450 F.Supp.3d 854 (S.D. Iowa 2020) ................................ 11, 12

*Freeman v. Busch*, 150 F.Supp.2d 995 (S.D. Iowa 2001) ................................................................ 8

*Garafalo v. Lamda Chi Alpha Fraternity*, 616 N.W.2d 647 (Iowa 2000) ...................................... 8

*Gregory v. City of Rogers*, 974 F.2d 1006 (8th Cr. 1992) ............................................................. 13

*Gylten v. Swalboski*, 246 F.3d 1139 (8th Cir. Minn. 2001) ............................................................. 8

*Hartig v. Francois*, 562 N.W.2d 427 (Iowa 1997) .......................................................................... 8

*Leonetti's frozen Foods, Inc. v. Rew Marketing, Inc.*, 887 F.3d 438 (8th Cir. 2018) ...................... 6

*Leonetti's Frozen Foods, Inc. v. Rew Marketing, Inc.*, 887 F.3d 438 (8th Cir. 2018).... 6, 9, 11, 12

*Madden v. City of Eldridge*, 661 N.W.2d 134 (Iowa 2003) ........................................................... 10

*Martinez v. City of Los Angeles*, 141 F.3d 1373 (9th Cir. 1998) ............................................... 9, 10

*McCormick v. Nikkel & Associates, Inc.*, 819 N.W.2d 368  (Iowa 2012) ....................................... 7

*Merriam v. National Union Fire Ins. Co. of Pittsburgh, PA*, 580 F.Supp.2d 838 (S.D. Iowa 2008) ..................................................................................................................................................... 7, 9

*Montgomery v. City of Ames*, 829 F.3d 968 (8th Cir. 2016) ............................................. 11, 12, 13

*Theisen v. Covenant Med. Ctr. Inc.*, 636 N.W.2d 74 (Iowa 2001). ................................................. 7

*Walker v. State*, 801 N.W.2d 548 (Iowa 2011) .............................................................................. 10

*Whisman Through Whisman v. Rinehart*, 119 F.3d 1303 (8th Cir. 1997). .............................. 12, 13

*Wright v. Brooke Group Ltd.*, 114 F.Supp.2d 797 (N.D. Iowa 2000) ......................................... 8, 9

**Other Authorities**

Restatement (Second) of Torts § 323 ................................................................................................ 7

**Disputed Facts**

Plaintiff Nevaeh Osorio (Nevaeh) was present at Defendant Des Moines Independent Community School District's (District) Roosevelt High School (Roosevelt) Homecoming Dance on October 5, 2019 as an invitee of a Roosevelt student (her friend, Katie), and with the approval and authorization of District staff. (Response to Defendants' Statement of Facts (RSOF) No. 1). More particularly, Katie and Nevaeh had to complete a Roosevelt form and receive permission and authorization for Nevaeh to attend the dance from Roosevelt's administration. (RSOF No. 1).

Three other girls who also attended the dance, S.L., M.W. and F.W., were known to Nevaeh and Katie, and approximately three weeks prior the dance, all of the girls attended a Roosevelt football game. (Defendants' Statement of Fact (DSOF) No. 23). It was at this game that Nevaeh first had an inkling that M.W. may have had "a problem with Mya" – when S.L. asked her about it – but nothing further happened that night. (DSOF No. 24; RSOF No. 24). Between that date and the dance, Nevaeh learned via Snapchat that M.W. was concerned that Nevaeh had made social media contact with a boy in Texas that M.W. had previously dated. (ROSF No. 25). Apparently upset, M.W. called Nevaeh a "ho," a "bitch" and told her she was "weird." (RSOF No. 25). Later, M.W. apologized for these messages, as well as the fight that later occurred between the girls. (RSOF No. 25).

Nevaeh and Katie attended the dance, and the events important to this matter only occurred toward the end of the night – beginning when M.W., S.L. and F.W. accosted Nevaeh on the dance floor and pushed and yelled at her. (RSOF No. 9, 11) Because she was aware of the assailants known propensity to fight, Nevaeh "did not feel safe … so [she] went over to Dowler." (RSOF No. 11). As Nevaeh described it, she "knew something was going to happen," that would be started by the three other girls, and she "wanted somebody to know." (RSOF No. 11).

At the time of the dance, Defendant Dowler was a Roosevelt teacher, who was present at the dance in his official capacity as a school employee. (DSOF No. 5; RSOF No. 6). As such, it was his responsibility to report all school policy violations and to make "every effort" to keep attendees safe, particularly when confronted with the possibility of a physical altercation. (RSOF No. 6). This includes either investigating the allegations himself or at least reporting it to administration or other authorities. (RSOF No. 6). It is undisputed Dowler did not do this.

Even if all a student told Dowler was that some other girls disliked the student, Dowler had an obligation as an employee to inquire more particularly to determine if harassment (and the potential for violence) was involved. (RSOF No. 6) It is undisputed that Dowler did not inquire further. (RSOF No. 6).

At this point Nevaeh's and Katie's accounts of the evening are vastly different from Defendant Dowler's. In order to illustrate the differences in the parties' and witnesses' testimony, here is a comparison between Nevaeh's and Katie's accounts on the one hand, and Dowler's on the other:

| **Nevaeh & Katie** | **Dowler** |
|---|---|
| • Nevaeh never discussed her new school (Ankeny) with Dowler (RSOF No. 9)<br><br>• Nevaeh approached Dowler immediately after being threatened, pushed and yelled at by the three girls, she "did not feel safe," "knew something was going to happen," and "wanted somebody to know." (RSOF No. 11).<br><br>• Katie testified Nevaeh approached Dowler because "she wanted to *go tell him*" about the other girls' threatening behavior (RSOF No. 9) | • Dowler and Nevaeh discussed Nevaeh's new school first – before any other topics arose. (DSOF No. 9)<br><br>• Per Dowler, Nevaeh had no signs of stress or emotion, and the conversation was super casual. (DSOF No. 11). |

| | |
|---|---|
| • Nevaeh testified the *first thing* she told Dowler was "these people are trying to fight me. He … just kind of giggled, and he was like who. *And I said Mya, Francine and Shene. And when I said that, I just kind of like pointed over there*" at the three girls. (RSOF No. 9) | • Per Dowler, only at the end of the discussion, did Nevaeh mention "generally" that "some students… did not like her," but she not only "did not provide specifics," she did not identify "who the students were." (DSOF No. 9). |
| • Katie confirmed this was what Nevaeh first said to Dowler: "She had told him that she felt uncomfortable and that she felt *the three girls were going to fight her*" and repeated their names to him. (ROSF No. 9, 16). | • Per Dowler, there were "no clues in Nevaeh's behavior or demeanor" that indicated any risk to her safety. (DSOF No. 13). |
| • Per Katie and Nevaeh, when they identified the three girls to Dowler, he acknowledged their dangerousness, noting: "Good thing you are standing by me then," and "stay away from them for the rest of the night." (RSOF No. 9) | • Dowler agreed he told Nevaeh to stay away from the students. (DSOF No. 12). |
| • After Dowler provided his inadequate response to her, Nevaeh "knew that he [Dowler] wasn't going to do anything" to protect her and she felt she was in danger. (RSOF No. 11). | |
| • When she left Dowler, Nevaeh immediately went to get her "stuff" in order that she could leave. (RSOF No. 11). | • Dowler did not accompany Nevaeh to ensure she could safely retrieve her things and leave. (RSOF No. 11). |

Shortly after leaving the wholly unhelpful Dowler, the assault began with a prelude – M.W. "muffed" Nevaeh (pushed her head downward), after which Nevaeh approached Dowler. Thereafter, F.W. and S.L. joined M.W. in assaulting Nevaeh. (RSOF No. 17). As Nevaeh and Katie described it:

> I [Nevaeh] was walking and somebody grabbed me – Shene like grabbed my hair, and she started hitting me… and she wouldn't stop. And I turned around, and I hit her back. And then Francine ran and came and grabbed me and started hitting me.

5

> Somebody pushed her off of me, and then I was like leaving, and Mya came and hit me.
>
> Nevaeh had tried to walk away. Then Shene pulled her hair back, kind of like, started punching, scratching her … she kept trying to walk away but kept getting pulled back, and then Francine jumped in.

(RSOF No. 17)

Although it's not entirely clear, it appears fellow students broke up the fight and Dowler arrived "later." (RSOF No. 18). The first person in authority Nevaeh saw was a female special education teacher who took down Nevaeh's statement on her phone. (RSOF No. 18). Nevaeh suffered a concussion, whiplash and scratches from the fight, was treated the next day at the hospital, and did not recover from the concussion or whiplash for several months. (RSOF No. 19). Nevaeh also developed anxiety, and by August 2020, she had moved to live with an aunt in Indiana so she could feel safe and not "freak out and like have a panic attack every time I leave the house." (RSOF No. 19).

F.W. and M.W. were suspended, and F.W. was charged with assault and placed on informal probation via juvenile court proceedings. (RSOF No. 19).

## Summary Judgment Standard

Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Leonetti's Frozen Foods, Inc. v. Rew Marketing, Inc.*, 887 F.3d 438, 442 (8th Cir. 2018). "In ruing on a summary judgment motion, a court must view the facts in the light most favorable to the non-moving party. In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Id*.

Case 4:20-cv-00109-HCA   Document 36-2   Filed 03/08/21   Page 7 of 14

**Argument**

A.   **Plaintiffs have properly made their negligent supervision claim, and Defendants' "special relationship" issue is a red herring.**

"Iowa and other jurisdictions recognize the concept of an 'assumed duty.'" *McCormick v. Nikkel & Associates, Inc.*, 819 N.W.2d 368, 375 (Iowa 2012) *citing* Restatement (Second) of Torts § 323. "That is, a duty can be imposed on a defendant who 'undertakes' to render a service to another." *Id*. **(**but finding no assumption of duty in that case). "Iowa courts have explicitly adopted § 323 as a basis for liability under Iowa law." *Merriam v. National Union Fire Ins. Co. of Pittsburgh, PA*, 580 F.Supp.2d 838, 865 (S.D. Iowa 2008) (rev'd in part on other grounds) *citing Am. State Bank v. Enabnit*, 471 N.W.2d 829, 832 (Iowa 1991). The assumed duty is established as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance on the undertaking.

*Merriam*, 580 F.Supp.2d at 865 *citing* Restatement (Second) of Torts § 323. The harm suffered must be physical. *Id. citing Theisen v. Covenant Med. Ctr. Inc.*, 636 N.W.2d 74, 82 (Iowa 2001).

This is precisely what happened here: Defendants undertook to keep Nevaeh free from harm, by not only authorizing her presence at the dance, but by providing supervisors to ensure student safety. (RSOF No. 1; RSOF No. 6) Defendants failed to exercise reasonable care to keep Nevaeh free from harm; taking the facts in the light most favorable to Nevaeh, she informed Dowler of the fact that the girls wanted to fight her, and Dowler knew of their propensity to fight, and he did no investigation or even refer the matter to those with more authority – despite his obligation to do so. (RSOF No. 6, 9, 11) Moreover, even if Dowler's testimony is credited, he didn't even conduct a basic inquiry into Nevaeh's purported statement (according to him) that the

7

girls didn't like her to determine if harassment was involved – again despite his obligation to do so. (RSOF No. 6, 9, 11). Finally, it is not disputed that Nevaeh relied on Defendants to keep her safe – this is why she reported the threat to Dowler. (RSOF No. 9, 11).

As for whether a duty should be imposed in the first place, three factors are considered: "(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations." *Wright v. Brooke Group Ltd.*, 114 F.Supp.2d 797, 831 (N.D. Iowa 2000) (noting the test is a balancing one, and each element is not necessarily required). As noted above, Nevaeh was a minor child guest of a Roosevelt student whose presence had to be approved and authorized; it was reasonably foreseeable that inadequately supervised persons in Nevaeh's position would be injured by aggressive attendees, and public policy weighs strongly in favor of protecting invitees. *Id*.

Finally, while some of Defendants' authority regarding duty is apt: *See Hartig v. Francois*, 562 N.W.2d 427, 429 (Iowa 1997) (establishing the elements of negligence); *Burton v. Metropolitan Transit Auth.*, 530 N.W.2d 696, 699 (Iowa 1995) ("Duty is a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.") *Garafalo v. Lamda Chi Alpha Fraternity*, 616 N.W.2d 647, 650 (Iowa 2000) (identifying the existence of a duty is a question of law for the court).

The rest of it, particularly regarding any special relationship between a school district and non-student, is inapposite. *See Gylten v. Swalboski*, 246 F.3d 1139, 1143 (8th Cir. Minn. 2001). *Freeman v. Busch*, 150 F.Supp.2d 995, 1001 (S.D. Iowa 2001) This is because, in this matter, Defendants affirmatively undertook a duty to supervise not just Des Moines School District

students, but each student it approved to attend the dance via its permission slip process. (RSOF No. 1).

Likewise, it should also be noted that Defendants' authority is factually distinguishable from the present matter: in *Gylten*, a high-school athlete was simply driving from one of his district's campuses to another when he collided with that plaintiff's vehicle. *Gylten,* 246 F.3d at 1141. At no time was it alleged that Gylten was invited to, or approved to be at, the school district's sponsored event by any agent of the school district. *Id*. Similarly in *Freeman*, that plaintiff had been invited to a party on Simpson College's campus by another student, and at no time had her presence been approved by a Simpson College agent or employee. *Freeman*, 150 F.Supp.2d at 998. These scenarios are markedly different from the present situation, where Defendant explicitly mandated that all attendance be approved by its agent. (RSOF No. 1).

Therefore, clearly Defendants had a duty to Nevaeh that they failed, and genuine issues of material fact exist for Nevaeh's negligent supervision claim, such that summary judgment must be denied. *Merriam*, 580 F.Supp.2d at 865; *Wright,* 114 F.Supp.2d at 831; *Leonetti's,* 887 F.3d at 442.

**B.      Defendants are not immune from suit for their negligence in this matter.**

In their brief, Defendants mischaracterize the nature of discretionary function immunity. As the Ninth Circuit has described the analysis: "To determine which acts are discretionary … courts do not look at the literal meaning of 'discretionary,' because almost all acts involve some choice between alternatives." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (internal citations and quotations omitted).

Under Iowa law, "liability is the rule and immunity the exception," and the court will "narrowly construe the discretionary function exception," proof of which is the defendants'

burden. *Walker v. State*, 801 N.W.2d 548, 555 (Iowa 2011). In the present matter, Defendants cannot establish that they are entitled to this immunity, to wit:

> While most governmental actions involve some degree of discretion, only those choices based upon the meaningful exercise of discretion are immune from liability. The critical distinction is the one between a judgment that embodies a professional assessment undertaken pursuant to a policy of settled priorities and a fully discretionary judgment that balances incommensurable values in order to establish those priorities. ***An immune governmental function is one that weighs competing ideals in order to promote those concerns of paramount importance over the less essential, opposing values…. The circumstances must show the city legitimately could have considered social, economic, or political policies when making judgements.***

*Madden v. City of Eldridge*, 661 N.W.2d 134, 139 (Iowa 2003) (emphasis added).

In *Madden*, a city inspector failed to perform an inspection "despite his knowledge there could be violations of the building code which could render the building hazardous." *Madden*, 661 N.W.2d at 140. The court found this "decision not to require compliance … did not involve a high degree of discretion and judgment," and "did not reflect real policy decisions implicating governmental functions," and, therefore, no discretionary immunity applied. *Id.* (but still affirming summary judgment on other grounds).

Or as the Ninth Circuit has succinctly put it: "There is no immunity if the injury … results, not from the … exercise of discretion … to undertake the act, but from his negligence in performing it." *Martinez*, 141 F.3d at 1379.

In the present matter, the decision to provide supervision of all attendees, including Nevaeh, had been made long before the evening of the dance. (RSOF No. 1, 6) Dowler's decision to do nothing to help Nevaeh on the night of the dance was not the exercise of discretion on whether or not to supervise (RSOF No. 6, 9, 11), rather it was simply the negligent performance of supervising the dance – conduct that is not protected by discretionary immunity. *Madden*, 661 N.W.2d at 140; *Martinez*, 141 F.3d at 1379.

Therefore, as genuine issues of material fact exist as to Defendants' negligent supervision of Nevaeh, summary judgment must be denied. *Leonetti's,* 887 F.3d at 442.

**C.    Defendant Dowler had a duty to protect Plaintiff in this matter, and his failure to do so establishes the 42 U.S.C. § 1983 claim.**

While it is true that "a State's failure to protect an individual against private violence," does not generally "constitute a violation of the Due Process Clause," it does when it "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced." *Montgomery v. City of Ames*, 829 F.3d 968, 972 (8th Cir. 2016) To prevail, Plaintiffs must demonstrate Dowler "affirmatively created a significant risk of serious, immediate, and proximate harm, that the risk was obvious or known to the defendant, that the defendant acted recklessly in conscious disregard of the risk and that the defendant's conduct "shocks the conscious." *Id*. And while a "shocks the conscience" test is generally applied, this "yields to more particular standards when warranted by the claims involved in a given case," such as ignoring a serious need or failing to protect a person from "serious risk of harm." *C.P.X. through S.P.X. v. Garcia*, 450 F.Supp.3d 854, 903 (S.D. Iowa 2020). Each of these elements is present here with regard to Defendant Dowler, taking the facts in the light most favorable to Nevaeh:

- Dowler was present to provide supervision and ensure school policy was followed at the dance. (RSOF No. 6).

- Dowler was aware on October 5, 2019 of the dangerousness of M.W., S.L. & F.W. and their propensity to fight. (RSOF No. 9)

- Katie and Nevaeh immediately approached Dowler after M.W., S.L. & F.W. threatened, pushed and yelled at Nevaeh to tell him that Nevaeh was afraid the other girls would start a fight. (RSOF No. 9, 11)

- The first thing Nevaeh told Dowler was "these people are trying to fight me." (RSOF No. 9).

- Nevaeh identified the girls by name – and repeated their names. (RSOF No. 9, 16)

11

- Dowler's response was shockingly limited: (1) he "giggled"; and then said only a few things: (2) "Good thing you are standing by me then;" (3) "stay away from them" and (4) "go somewhere else." (RSOF No. 9).

- Dowler conducted no follow-up – he did not investigate the allegations, or report them to someone with more authority, and did not inquire further of Nevaeh, Katie, M.W., S.L. or F.W. (RSOF No. 6)

- Dowler did not accompany Nevaeh when she left him to get her things and leave the dance. (RSOF No. 11).

- Within a minute of Dowler's wholly inadequate response, M.W., S.L. and F.W. viciously attacked Nevaeh, causing whiplash, concussion and scratches. (RSOF No. 17, 18).

- The attack by these girls known to be dangerous was so vicious, M.W. and F.W. were suspended and F.W. was charged by the juvenile court and placed on informal probation. (RSOF No. 19).

Taking these facts in the light most favorable to Plaintiffs, Dowler, who knew the attackers were dangerous, created the risk of harm when he recklessly and in conscious disregard of the danger to Nevaeh, merely giggled and told her to stay away from the other girls, but did nothing – to the point that he didn't even escort her from the dance. (*Id.*) Clearly, Dowler's conduct meets the standard of a constitutional deprivation. *Montgomery,* 829 F.3d at 972; *C.P.X.,* 450 F.Supp.3d at 903. Therefore, genuine issues of material fact exist such that summary judgment must be denied. *Leonetti's,* 887 F.3d at 442.

D. **Defendants are not entitled to qualified immunity.**

"Government officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997). Two-steps are analyzed for a qualified immunity defense: (1) whether there is a violation of a constitutional right; and (2) "whether the right was clearly established at the time of the alleged violation." *Id*.

As noted above, when a government actor "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced," *Montgomery*, 829 F.3d at 972, this violates the individual's constitutional rights – establishing the first prong to reject the qualified immunity defense. *Whisman*, 119 F.3d at 1309.

As for the second prong, that this is a violation of a constitutional right has been well-established for decades. *See Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cr. 1992). Thus, Defendants are not entitled to a qualified immunity defense. *Whisman*, 119 F.3d at 1309.

Therefore, taking the facts in the light most favorable to Plaintiffs, genuine issues of material fact exist on each of Plaintiffs' claims such that summary judgment must be denied.

## Conclusion

For the reasons aforesaid, Plaintiff Kristy Mitchell, individually and as mother and next friend of Nevaeh Osorio, respectfully requests this Court enter an Order denying Defendants' motion for summary judgment.

Respectfully submitted,

*/s/ Jeffrey M. Lipman*
Jeffrey M. Lipman     AT0004738
LIPMAN LAW FIRM, P.C.
1454 30th St. Suite 205
West Des Moines, IA 50266
Telephone: (515) 276-3411
Facsimile: (515) 276-3736
Email: jeff@lipmanlawfirm.com

*/s/ Alison F. Kanne*
Alison F. Kanne   AT0013262
Wandro & Associates, P.C.
2501 Grand Avenue, Suite B
Des Moines, IA 50312
T: (515) 281-1475
F: (515) 281-1474
Email: akanne@2501grand.com

**ATTORNEYS FOR PLAINTIFFS**

Copy via Efiling to:

Janice M. Thomas
BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.

**ATTORNEYS FOR DEFENDANTS**