IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KRISTY MITCHELL, individually and as next friend of NEVAEH OSORIO,<br><br>Plaintiff,<br><br>vs.<br><br>DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT, and TIMOTHY DOWLER,<br><br>Defendants. | 4:20-cv-00109-HCA<br><br><br>**ORDER GRANTING MOTION<br>FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Before the Court is a Motion for Summary Judgment filed by Defendants Des Moines Independent Community School District and Timothy Dowler ("Defendants") on February 15, 2021. ECF No. 35. Plaintiff Kristy Mitchell, individually and as next friend of Nevaeh Osorio, filed a resistance on March 8, 2021. ECF No. 36. Defendants filed a reply on March 15, 2021. ECF No. 37. The Court heard oral arguments on the Motion on June 15, 2021. The Court considers the matter fully submitted.

## II.    SUMMARY OF KEY FACTS

The following facts are either undisputed or, if disputed, viewed in the light most favorable to Plaintiff, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Other facts will be noted as relevant in the discussion and analysis section of this Order.

On October 5, 2019, Neveah Osorio ("Osorio") attended Des Moines Independent Community School District's Roosevelt High School's ("Roosevelt") homecoming dance. Pl. Complaint, ECF No. 1, ¶ 9. The dance was held at Hy-Vee Hall in Des Moines, Iowa. Defs.' Statement of Facts, ECF No 35-2, ¶ 1. Osorio had attended Roosevelt her freshman year of high school. ECF No 35-2, ¶ 2. At the time of the dance, Osorio was a sophomore at Ankeny High School; so, she attended as a guest of her friend, K.H., who was a student at Roosevelt. *Id.* ¶ 1-4. The girls submitted a "guest request form" to register Osorio to attend the dance. Pl. Response to Facts, ECF No. 36-1 ¶ 1[1].

Three other minor girls, M.W., F.C., and S.L, also attended the dance. *Id.* ¶¶ 20-30. Each of these girls was a student at Roosevelt. *Id.* Osorio had interacted with the girls before the dance. *Id.* In particular, M.W. had asked Osorio why she followed M.W.'s ex-boyfriend on Instagram. *Id.* Osorio stated she had seen the three girls previously at sporting events, but never had any problems or disagreements with them prior to the dance. *Id.*

Timothy Dowler ("Dowler") is a teacher at Roosevelt. *Id.* ¶¶ 5-7. Dowler was a teacher and chaperone at the Roosevelt homecoming dance on October 5, 2019. *Id.* As a chaperone, Dowler's duties that night were to "walk around, talk with students, and make sure everything was running smoothly." *Id.*

Dowler and Osorio have differing accounts of a conversation they had the night of the dance. Viewing the facts in the light most favorable to Plaintiff, the Court relies on Osorio's version of the conversation in its analysis of the summary judgment motion[2].

---

[1] Neither party included a copy of the "guest request form" in the summary judgment record.

[2] According to Dowler, he and Osorio talked about her transition to Ankeny High School. *Id.* ¶ 8-11. Dowler described Osorio's demeanor throughout their conversation as casual and non-emotional. *Id.* At the end of their conversation, Osorio mentioned to Dowler that some students at the dance did not like her, but she did not provide more details. *Id.* Dowler advised Osorio to stay away from those students who did not like her. *Id.*

According to Osorio, she approached Dowler because she knew him. ECF No 36-1, ¶¶ 9-11. The first thing Osorio said to Dowler was "these people are trying to fight me." *Id.* Osorio told Dowler the people trying to fight her were M.W., F.C., and S.L. *Id.* Dowler laughed off Osorio's concern, and told her to go somewhere else. *Id.*

Osorio "knew" that Dowler was not going to act on her concern, so she retrieved her personal items and was preparing to leave the dance with K.H. and another minor female. *Id.;* P. App, ECF No. 36-3, pp.11, 20. A physical altercation then broke out at the dance between Osorio and M.W., F.C., and S.L. *Id.* ¶¶ 17-18. The record indicates that Dowler played a role in breaking up the fight shortly after it began. Dowler testified that he was not aware of who was involved in the fight because everything happened quickly. ECF No 35-2, ¶¶ 17-18. Osorio reported she suffered a concussion, whiplash, and scratches from the attack. ECF No 36-1, ¶ 19. Osorio also stated that she suffers from anxiety following the fight and felt that she had to move out of the state so that she could feel safe. *Id.*

### III.   PROCEDURAL BACKGROUND

On February 20, 2020, Osorio's mother filed a lawsuit on Osorio's behalf and in her individual capacity against Dowler and Roosevelt in the Iowa District Court for Polk County. Pl. Complaint, ECF No. 1, ¶ 9. Plaintiff brought a claim for negligent supervision under Iowa law and for failure to protect under 42 U.S.C. § 1983. *Id.* ¶¶ 21-39. Defendants removed the case to this Court on March 24, 2020 based on federal question jurisdiction, with supplemental jurisdiction over the state law claim. Notice of Removal, ECF No. 1, ¶¶ 5-6.

## IV.  STANDARD OF REVIEW

A court must grant a party's motion for summary judgment when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Schueller v. Goddard*, 631 F.3d 460, 462 (8th Cir. 2011) (quoting *Myers v. Lutsen Mtns. Corp.*, 587 F.3d 891, 893 (8th Cir. 2009)). *See also* FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A "genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At this stage, the Court's function is not to determine credibility, weigh the evidence, or determine the truth of the matter. *Anderson*, 477 U.S. 249. *See also Wealot v. Brooks*, 865 F.3d 1119, 1128 (8th Cir. 2017) ("Disputed factual issues and conflicting testimony should not be resolved by the district court."). Questions of law, as opposed to fact questions, are particularly appropriate for summary judgment. *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

The Court must view the facts in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences which can be drawn from the facts, *Hustvet v. Allina Health System*, 910 F.3d 399, 406 (8th Cir. 2018), that is, "reasonable inferences that may be drawn without resorting to speculation." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004). *See also Howard v. Columbia Public Schl. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) ("unreasonable inference or sheer speculation" not accepted as fact). There "must . . . be enough evidence to allow a rational trier of fact to find for "nonmovants on the required elements of their claims." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). If the moving party meets its burden, the party resisting summary judgment must "go

beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999).

## V. LEGAL ANALYSIS AND DISCUSSION

First, the Court will address the state law negligent supervision claim. Second, the Court will address the Section 1983 federal failure to protect claim.

### 1. *Negligence*

Count I in Plaintiff's Petition is titled as "negligent supervision,"[3] and is asserted against both Dowler and the Des Moines School District. Defendants seek summary judgment on the claim. Defendants argue the negligence claim fails as a matter of law because Defendants did not owe a duty to Osorio, as she was a non-student. Defs. Brief, ECF No. 35-1, at 6-9. Defendants also argue they are immune from suit under Iowa law. *Id.*

The Court must determine whether Defendants had a duty to protect Osorio. As the Court has federal question jurisdiction over this case, it exercises supplemental jurisdiction over the state-law claim and will apply Iowa substantive law to the negligent supervision claim. *See Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n. 9 (8th Cir.2003). Whether Defendants owed a duty to Osorio is a question of law for the Court to decide, it is not a question of fact for the jury. *Burton v. Des Moines Metro. Transit Auth.*, 530 N.W.2d 696, 699 (Iowa 1995).

To determine whether a legal duty exists, courts consider: "(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public

---

[3] The Court understands the negligent supervision claim to be one of negligence as it relates to the supervision of a child, as opposed to a claim of negligent supervision of an employee. *See Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 882 (Iowa 2009), *but see Est. of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 679 (Iowa 2004).

policy considerations." *Wright v. Brooke Grp. Ltd.*, 114 F. Supp. 2d 797, 831 (N.D. Iowa 2000). When considering if a duty exists, courts look at "whether the relationship between the actor and the injured person gives rise to any legal obligation on the actors part for the benefit of the injured person." *Burton,* 530 N.W.2d 107. A party may assume a legal duty if it undertakes to "render services to another which he should recognize as necessary for the protection of the other's person or things." *Am. State Bank v. Enabnit*, 471 N.W.2d 829, 832 (Iowa 1991) (citing Restatement (Second) of Torts § 323 (1965)).

Plaintiff's position on the basis for any alleged duty has morphed significantly during the litigation. In the petition, Plaintiff asserted the duty was based on a special relationship that existed because Osorio was a student of the Des Moines Public School District. Defendants filed their original brief based on the alleged special relationship as pled in the Petition. In her responsive brief, Plaintiff argued Defendants assumed a duty of care by approving Osorio's attendance at the dance and/or by providing chaperones, such as Dowler, at the dance. Pl. Response, ECF No. 36-2, at 7-10. At the hearing on this Motion, Plaintiff contended that the issue of a special relationship was in essence a red herring. She then argued that if a duty did not already exist, Dowler assumed a duty of care to Osorio once Osorio reported her concern that three girls at the dance wanted to fight her.

Because of Plaintiff's shifting basis for the alleged duty, the Court first examines whether there was a "special relationship" between Osorio and Defendants that created a duty of care to protect her. A "special relationship" may exist in situations involving "common carriers and passengers, innkeepers and guests, possessors of land and invitees, and those who are required by law to take or who voluntarily take the custody of another under certain circumstances." *Freeman v. Busch*, 150 F. Supp. 2d 995, 1001 (S.D. Iowa 2001). In the Petition, Plaintiff alleged

that "Defendant Timothy Dowler had a duty to protect Plaintiff Neveah as she was a student of Des Moines Independent Community School District attending the dance." ECF No. 1, p. 7, ¶ 15. Plaintiff re-pled and restated this allegation in her negligent supervision claim. ECF No. 1, p. 8. ¶ 21. Plaintiff does not plead any other basis for this duty in her negligent supervision claim.  It is clear from the summary judgment record that Neveah Osorio was not a student of the Des Moines School District at the time she attended the dance in October of 2019, so that relationship cannot form the basis for a duty of care. As a result, the negligent supervision claim fails.

The Court could end its analysis of the negligent supervision claim based solely on this fatal pleading flaw.[4] As noted previously, Plaintiff has shifted her argument as to the basis of the alleged duty. In her responsive brief, Plaintiff argued that a duty was created because Osorio had to register as a guest before attending the dance. At oral argument, however, plaintiff's counsel conceded that the guest registration form was not relevant to the duty analysis, thus waiving that argument. Furthermore, the summary judgment record does not contain a copy of the guest registration form and the contents of the form are unknown. Additionally, the summary judgment record does not establish why the form was required or that there was an approval process by the Des Moines School District once the registration form was submitted.

Plaintiff also contended that an assumed duty arose because the District placed chaperones at the dance and/or because Osorio reported her concern to Dowler. Even though these bases were not pled, in an abundance of caution and because the parties discussed those issues in briefing and at oral argument, the Court will continue its analysis of the assumption of duty argument.

---

[4] At no time, did Plaintiff ever amend her Petition.

The key question is whether Defendants had a duty to protect a non-student of the district attending an off-campus dance as a guest. Plaintiff has not cited any Iowa case where a duty was found between a school district and a non-student attending a school sanctioned activity. The Iowa Supreme Court has acknowledged that a school district is required to exercise the same standard of care toward its students that a parent of ordinary prudence would observe in comparable circumstances." *Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999) (finding that a school district did not breach its duty of care in not preventing sexual abuse of a student by an employee of the school district). Under Iowa law, however, a special relationship does not arise when a college provides security/supervisory services to protect students and guests of students. *Freeman*, 150 F. Supp. 2d at 1001-3. The *Freeman* court noted "the claim of a contractual duty is even weaker because plaintiff is not a student." *Id.* The mere fact that the university recognized its students would likely entertain guests did not give rise to a duty to protect them. *Id.* The Eighth Circuit Court of Appeals has held a school district does not have a special relationship with a non-student third party. *Gylten v. Swalboski*, 246 F.3d 1139, 1144 (8th Cir. 2001) (interpreting Minnesota law). The Court found several cases interpreting New York law, where the New York state court held a school district did not have a duty to protect non-student spectators who were injured at high school events even though the school had provided security services. *See Jerideau v. Huntington Union Free Sch. Dist.*, 801 N.Y.S.2d 394, 396 (2005) (applying New York law); *Bain v. New York City Bd. Of Educ.,* 702 N.Y.S.2d 334 (2000); *Dickerson v. City of New York*, 684 N.Y.S.2d 584 (1999). The Court finds the analysis set forth in these Eighth Circuit and New York State cases persuasive.

The Court will now further analyze whether Osorio's presence at the homecoming dance created a duty for the school district and its chaperones to protect her. The Court finds that the

guest request form the girls submitted did not create a special relationship between Osorio and Defendants. The form is not in the record, but Roosevelt's 2019-2020 Student Handbook is. ECF No. 36-3, at 43. Per the Handbook, current Roosevelt students were required to register their guest with a "Guest Request Form." *Id.* The Handbook sets age limits for guests, but it does not indicate the process of denying a student's guest request. *Id.* Presumably, so long as a guest meets the age requirements, they will be permitted to attend the dance. *Id.* Osorio testified at her deposition that someone in the administration of both her and K.H.'s school districts had to sign the form. *Id.* at 8. The summary judgment record does not establish a genuine material fact as to whether the school district used the guest form as an approval process versus using the form as a to register who would be attending the dance as a guest. As set out in the *Freeman* case, Roosevelt's mere acknowledgment that students may have guests does not give rise to a legal duty to protect those guests. Although the *Freeman* case involved a university, the Court finds it makes no difference to the special relationship analysis.

Plaintiff also suggested that Osorio's mere presence at the dance, irrespective of the guest request form, created a legal duty on Defendants to protect her. At the hearing on this Motion, Plaintiff's counsel was not able to cite to any case law to back this proposition, but stated it was common sense that a school district owes a duty to protect all minors attending school events. Essentially, Plaintiff argues that by hosting extracurricular activities, a school district has a duty to protect all the minors who are present at those activities/events. Plaintiff relies heavily on the public policy considerations courts analyze when determining whether a duty exists.

The Court is unconvinced based on this record that a school district owes a duty to a non-student attendee of an off-campus school event. Defendants did not have a duty to protect non-student attendees simply by allowing non-students to attend the dance, nor was a special

relationship formed. *See Gylten v. Swalboski*, 246 F.3d 1139, 1143 (8th Cir. 2001); *Jerideau v. Huntington Union Free Sch. Dist.*, 801 N.Y.S.2d 394, 395 (2005). The Court finds it the summary judgment record does not establish that it is foreseeable a dance attendee could be involved in an altercation such as a fight. Furthermore, there is nothing in the record to suggest Osorio was particularly at risk. While Plaintiff has argued public policy weighs in favor of finding a duty exists in this case because parents expect their children to be protected when attending events other districts put on, there are also considerations that weigh against such a finding. For example, if the Court were to hold schools have an unequivocal duty to protect non-student attendees of their events, litigation similar to the present case could be brought every time there was a schoolyard fight. The Court does not believe that public policy would require a school district to become a guarantor of the safety of every individual that might attend a school related event. The Court does not view the public policy considerations as especially significant, but it does find public policy weighs in favor of holding there is no duty in this instance. In sum, the Court finds as a matter of law that Defendants had no duty to protect Osorio from harm simply because she attended the dance.

Next, the Court will consider whether Defendants assumed a duty to protect Osorio by providing chaperones at the dance or if such a duty attached after Osorio advised Dowler that girls at the dance wanted to fight her. An assumed duty may be found where an individual undertakes:

> to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Am. State Bank*, 471 N.W.2d 832. Plaintiff asserts the service Defendants undertook to provide was to keep Osorio (and other dance attendees) free from harm. Plaintiff argues Dowler failed to exercise reasonable care by not investigating Osorio's claim that the girls wanted to fight her, which increased the risk of harm to her. Defendants argue they cannot be held liable under an assumed duty theory because Defendants did not render a service to Osorio. *Id.* Defendants assert Plaintiff incorrectly attempts to base assumed liability upon a failure to render services. *Id.*

Even viewed in the light most favorable to Plaintiff, the summary judgment record does not support Plaintiff's theory of assumed duty. The record is devoid of evidence that shows Defendants were providing any service to Osorio as the result of her decision to attend the dance.

Even if the Court found Defendants were providing a service to Osorio and Dowler failed to exercise ordinary care, Dowler's actions did not increase the risk of harm to Osorio. Per Osorio's account of her conversation with Dowler, he told her to stay away from the girls who were trying to fight her. This advice did not increase the risk that the three girls were in fact going to attack Osorio. Plaintiff can argue Dowler may have been able to prevent the fight from occurring at the dance, but she cannot show that his actions increased the risk that the fight would happen. Further, Osorio's reliance on any service Defendants may have been providing did not cause her harm. Again, the Court concludes as a matter of law that Defendants cannot be held liable under an assumed duty theory.

In conclusion, the Court finds that Defendants are entitled to judgment as a matter of law on Count I. Given this result, Court finds it unnecessary to address Defendants' state-law assertion of immunity. The Motion for Summary Judgment is **granted** as to Count I.

## *2. Failure to Protect*

Count II of Plaintiff's claim is one for failure to protect under 42 U.S.C. § 1983, asserted against only Dowler. Defendants seek summary judgment of this claim as well. Defendants argue Dowler is entitled to judgment as a matter of law because Section 1983 does not protect individuals from a state actor's failure to protect someone from private violence; and Dowler did not affirmatively create the danger that the girls would attack Osorio. Defs. Brief, ECF No. 35-1, at 9-11. Defendants also argue Dowler is immune from suit under qualified immunity. *Id.* at 16-17.

At the hearing on this Motion, Plaintiff clarified she is alleging Dowler violated her Fourteenth Amendment substantive due process right to be protected from state-created danger. *See Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir. 1992). The Fourteenth Amendment Due Process Clause protects persons against abusive, arbitrary, or oppressive government conduct. *Id.* at 1009-1010. Many harms, even if caused by a state actor, do not fit within the scope of Section 1983. In fact, Section 1983 does not convert the Fourteenth Amendment into "a font of tort law that supersedes the tort systems already available under individual state laws." *Id.* An official's lack of due care that causes unintended injury to life, liberty or property does not implicate the Fourteenth Amendment. *Id.* In order to survive the motion for summary judgment, Plaintiff must demonstrate that the summary judgment record supports her claim that Dowler's conduct rose to the level of a constitutional tort for which Section 1983 provides a remedy. *Id.*

The Court first will address whether Dowler is shielded from liability under qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."

*Kisela v. Hughs*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). Whether qualified immunity attaches presents two question: (1) "does 'the evidence, viewed in the light most favorable to [plaintiff], establish a violation of a constitutional [or statutory] right,'" and (2) was the right clearly established at the time of the deprivation. *Stark v. Lee Cty.*, 993 F.3d 622, 625 (8th Cir. 2021) (internal quotation and citation omitted). The Court can analyze either question first. *See Boudoin v. Harsson*, 962 F.3d 1034, 1039 (8th Cir. 2020). In this case, the Court finds it appropriate to first examine whether the alleged due process right violated was clearly established.

"Clearly established" does not require reference to a case "directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). The Eighth Circuit has identified the following three ways in which a plaintiff can show a constitutional right is clearly established: (1) she may identify circuit precedent involving sufficiently similar facts that squarely governs the situation; (2) she may point to a "robust consensus of cases of persuasive authority" establishing that the facts of her case make out a violation of a clearly established right; or (3) a plaintiff may show, in rare instances, that a general constitutional rule applies with obvious clarity to the facts at issue and carries the day for her. *L.G. through M.G. v. Columbia Public Schools,* 990 F.3d 1145, 1147-48 (8th Cir. 2021) (citations omitted). The guiding principle behind this approach is that state actors are liable only for transgressing bright lines, not for making a less than stellar decision in a gray area. *Id*. at 1148.

"Clearly established law" must focus on the particular facts of a case and should not be defined at a high level of generality. *Id.* At the hearing, Plaintiff's counsel conceded there was no Supreme Court nor circuit precedent that squarely governs the instant situation, nor did he have a

"robust consensus of cases of persuasive authority." Arguably, Plaintiff claims that this is one of those rare cases where a general constitutional rule applies with obvious clarity and carries the day for her. In support, Plaintiff cites to *Gregory v. City of Rogers*, for the proposition that the Due Process Clause imposes a duty of protection on a state actor when the state affirmatively placed a specific individual in a position of danger the individual would not otherwise have faced. Plaintiff argues that Dowler's lack of action when Osorio reported her concern to him fits squarely into this proposition.

The Court disagrees for two main reasons. First, the summary judgment record, viewed in the light most favorable to Plaintiff, simply does not support that Dowler affirmatively placed Osorio in a position of danger that she would not have otherwise faced. At most, Dowler's lack of action did not ameliorate the danger Osorio was already facing, but it did not place Osorio in a position of danger that she was not already facing by attending the dance with the three girls who attacked her. Second, the Court finds that the general proposition and the situation in *Gregory* are so vastly different than the factual situation here that a reasonable person in Dowler's shoes would not have been put on notice that he/she was violating a clearly established statutory or constitutional right.

Furthermore, the Court also concludes that the summary judgment record does not establish a violation of a constitutional right as required to avoid qualified immunity from attaching.[5] To establish a Section 1983 claim under a state-created danger theory, Plaintiff must show: Osorio was a member of a "limited, precisely definable group;" Defendants conduct put Osorio at a "significant risk of serious, immediate, and proximate harm;" the risk was "obvious or known" to the Defendants; the Defendants "acted recklessly in conscious disregard of the

---

[5] For the reasons set forth in this section and the negligent supervision claim, the Court also notes that Plaintiff is unable to demonstrate that she can survive summary judgment on the merits of her Section 1983 claim.

14

risk;" and Defendants' actions "shock the conscience." *Est. of Johnson v. Weber*, 785 F.3d 267, 271-73 (8th Cir. 2015) (internal quotation omitted). Neither negligence nor gross negligence can support a Section 1983 claim, rather "actionable substantive due process claims involve a level of abuse and power so brutal and offensive that they do not comport with traditional ideas of fair play and decency." *Id.* (citing *Hart v. City of Little Rock*, 432 F.3d 801 (8th Cir. 2005)) (internal quotations omitted). Where an official is "deliberately indifferent" to a serious risk of harm to an individual, he may be held liable under Section 1983 for violating substantive due process rights. *Id.* ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The Court must ascertain whether Dowler created harm to Osorio such that he owed a duty to protect her under the Constitution. Plaintiff argues Dowler: "knew the attackers were dangerous, created the risk of harm when he recklessly and in conscious disregard of the danger to Nevaeh, merely giggled and told her to stay away from the other girls, but did nothing – to the point that he didn't even escort her from the dance." Pl. Response, ECF No. 36-2, at 11-12. Defendants argue Plaintiff has failed to prove any of the required elements of the state-created danger doctrine. Defs. Brief, ECF No. 35-1, at 9-16.

Even looking at the facts most favorably to Plaintiff, Dowler is entitled to judgment as a matter of law on the failure to protect Section 1983 claim. If Osorio approached Dowler and informed him there were girls at the dance who were trying to fight her, this is not sufficient to show there was a serious, immediate, and proximate risk of harm. Dowler did not see the three girls who Osorio stated wanted to fight her; he could not have known at that time whether the threat of violence was serious or proximate. ECF No. 36-3, at 11. Nor do Dowler's actions, or lack thereof, rise to the level of a deliberate indifference toward Osorio's safety. Again, even

assuming Osorio had come to Dowler stating the three girls wanted to fight her, he would not have been apprised of the existence of a "substantial risk of serious harm" to Osorio. As previously stated, there is nothing in the record to suggest Dowler knew the three girls were dangerous, or that any threat of violence was serious or imminent. The Court already has concluded Dowler did not increase the risk of harm to Osorio.

Further, Dowler's actions the night of the dance do not shock the conscious. According to Osorio's account of her conversation with Dowler, he provided practical advice to go somewhere else to avoid the individuals who wanted to fight her. Osorio stated Dowler laughed during their interaction, and while such a response may have been inappropriate it does not rise to a level of shocking the conscious. Even considering the facts in a light most favorable to her, Plaintiff has failed to show that Dowler violated her substantive due process rights.

In conclusion, Dowler is entitled to qualified immunity as to Count II. *See Moore v. Briggs*, 381 F.3d 771, 775 (8th Cir. 2004) (finding that qualified immunity inquiry ended when Plaintiff failed to adequately support a claim for an alleged substantive due process violation). As Dowler is shielded from liability by qualified immunity, Defendants' Motion for Summary Judgement is **granted** as to Count II.

## VI.   CONCLUSION

Defendants' Motion for Summary Judgment, ECF No. 35, is **GRANTED**. Defendants have demonstrated that there is no genuine issue of material fact as to either of Plaintiff's claims.

Defendants are entitled to judgment as a matter of law on the record before the Court. As a result, the Clerk is directed to dismiss the case with prejudice.

**IT IS SO ORDERED.**

Dated September 13, 2021.

_Helen C. Adams_
Helen C. Adams
Chief U.S. Magistrate Judge